UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LORENZA AVILA | § | No. 1:24-cv-0242-DAE |
| _Plaintiff,_ | § | |
| | § | |
| v. | § | |
| | § | |
| METROPOLITAN LIFE | § | |
| INSURANCE COMPANY and | § | |
| DELL INC., | § | |
| _Defendants._ | § | |

ORDER (1) ADOPTING IN PART REPORT AND RECOMMENDATION; (2)
DENYING DEFENDANT DELL'S MOTION TO DISMISS; AND (3)
GRANTING DEFENDANT METLIFE'S MOTION TO DISMISS

Before the Court is a Report and Recommendation

("Recommendation") filed by United States Magistrate Judge Susan Hightower.

(Dkt. # 56.)  On December 6, 2024, Defendant Metropolitan Life Insurance

Company ("MetLife") filed its respective Motion to Dismiss.  (Dkt. # 42.)  On

December 9, 2024, Defendant Dell, Inc. ("Dell") also filed its respective Motion to

Dismiss.  (Dkt. # 43.)

On March 21, 2025, Judge Hightower submitted a Report and

Recommendation, recommending that the Court (1) grant in part and deny in part

Defendant MetLife's Motion to Dismiss; (2) deny Defendant Dell's Motion to

Dismiss; and (3) strike Plaintiff's demand for a jury trial.  (Dkt. # 56 at 10.)  On

April 4, 2025, Defendants MetLife and Dell filed their respective objections to the

Recommendation.  (Dkt. ## 57, 58.)  On April 25, 2025, Plaintiff filed her response to the objections.  (Dkt. # 62.)  On May 5, 2025, with leave from the Court, Defendants MetLife and Dell filed replies in support of their objections. (Dkt. ## 65, 66.)

The Court finds this matter suitable for disposition without a hearing. After reviewing the Recommendation, objections, and the information contained in the record, the Court **ADOPTS IN PART** the Recommendation.  Defendant Dell's Motion to Dismiss (Dkt. # 43) is **DENIED** and Defendant MetLife's Motion to Dismiss (Dkt. # 42) is **GRANTED.**

## BACKGROUND

The Court agrees with Judge Hightower's recitation of the facts and incorporates them in full:

Plaintiff Lorenza Avila sues for recovery of her deceased husband's life insurance benefits under the Employee Retirement Income Security Act of 1974 ("ERISA") from Defendants MetLife and Dell.  (Dkt. # 56 at 1.)  Before his death, Plaintiff's husband, Arseny Lepiavka, worked at Dell beginning in June 2010 and was insured under a group term life insurance policy ("Policy") issued by MetLife.  (Id.)  Lepiavka had basic life insurance and supplemental life insurance coverage under the Policy.  (Id.)  Dell was the Plan Administrator and Plan

Sponsor for the Dell Inc. Comprehensive Welfare Benefits Plan ("Plan"), which included life insurance coverage through MetLife.  (Dkt. # 33 at 7.)

Lepiavka's insurance coverage purportedly lapsed on December 31, 2019, per the Policy's terms, so he had no life insurance coverage when he died nearly a year later.  (Id. at 8.)  Avila alleges that she and Lepiavka were not notified of this term by either Dell or MetLife of the need to port or convert his policy before the lapse.  (Id.)

MetLife denied Avila's life insurance claim because Lepiavka did not convert the Policy to an individual policy before exhausting his coverage.  (Id. at 1.)  In its denial letter, MetLife stated that it sent a letter to Lepiavka on November 19, 2019, notifying him of his option to convert to an individual policy ("Notice"). (Id. at 10, 23.)  Avila appealed MetLife's decision on the basis that neither she nor Lepiavka ever received the Notice.  (Id. at 14.)  MetLife upheld the denial of Avila's claim, stating that in addition to mailing Lepiavka the Notice, it also called him three times and left voicemail messages in December 2019.  (Id. at 15.)  Avila denies she or her late-husband ever received such messages.

On March 5, 2024, Avila filed the instant lawsuit against Defendant MetLife and Dell.  (Dkt. # 1.)  In her Amended Complaint, Avila asserts (1) a claim against MetLife under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), for "the full $775,000.00 in Basic and Optional Life Insurance to Lorenza as

3

beneficiary of the policy"; and (2) breach of fiduciary duty claims against MetLife and Dell under § 502(a)(3), 29 U.S.C. § 1132(a)(3).  (Dkt. # 33.)

On December 6, 2024, Defendant Metropolitan Life Insurance Company ("MetLife") filed its respective Motion to Dismiss.  (Dkt. # 42.)  On December 9, 2024, Defendant Dell, Inc. ("Dell") also filed its respective Motion to Dismiss.  (Dkt. # 43.)  On December 23, 2024, Avila filed a consolidated response to both motions to dismiss.  (Dkt. # 49.)  On January 3, 2025, MetLife and Dell each filed a reply in support of their respective motions to dismiss.  (Dkt. ## 50, 51.)  On March 21, 2025, Judge Hightower submitted her Recommendation on the motions to dismiss.  (Dkt. # 56.)  Defendants MetLife and Dell each filed objections to the Recommendation.  (Dkt. ## 57, 58.)

## APPLICABLE LAW

### I.    Review of Report and Recommendation

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider

4

"[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

II.    12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Review is limited to the contents of the complaint and matters properly subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he [C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

DISCUSSION

The Magistrate Judge recommends that this Court grant in part and
deny in part Defendant MetLife's motion to dismiss. (Dkt. # 56 at 10.)
Specifically, the Magistrate Judge recommends that the Court (1) grant the motion
as to Avila's claim for benefits and dismiss that claim with prejudice, and (2) deny
the motion as to Plaintiff Avila's claim for breach of fiduciary duty. (Id.) With
respect to Defendant Dell's motion to dismiss, the Magistrate Judge recommends
that the Court deny the motion. (Id.) The Magistrate further recommends the
Court strike Plaintiff's demand for a jury trial. (Id.)

Plaintiff did not file objections to the Recommendation, including
Judge Hightower's finding that Avila does not have a claim against MetLife for
wrongful denial of benefits under ERISA section 502(a)(1)(B), 29 U.S.C.
§ 1132(a)(1)(B) or striking her demand for a jury trial. (Id. at 3, 10.) Having
found Judge Hightower's analysis with respect to this claim is reasonable and
absent of clear error, the Court adopts the Magistrate's Recommendation and
**GRANTS** as unopposed MetLife's Motion to Dismiss Avila's claim for benefits
under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ("Count I").

I.     <u>Breach of Fiduciary Duty</u>

Defendants Dell and MetLife object to the Report's findings as to

Avila's breach of fiduciary duties claims.  (Dkt. ## 57, 58.)  Pursuant to ERISA's

section 502(a)(3), a "participant, beneficiary, or fiduciary" may sue "(A) to enjoin

any act or practice which violates any provision of this subchapter or the terms of

the plan, or (B) to obtain other appropriate equitable relief (i) to redress such

violations or (ii) to enforce any provisions of this subchapter or the terms of the

plan."  29 U.S.C. § 1132(a)(3).

It is well-settled law that relief under section 502(a)(3) is restricted to

"appropriate equitable relief for injuries caused by violations that § 502 does not

elsewhere adequately remedy."  <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 512 (1996).

A claim for equitable relief based on the breach of fiduciary duties under ERISA

requires proof that: (1) the defendant is a plan fiduciary; (2) the defendant breached

its fiduciary duties; (3) the breach caused the plaintiff's injury; and (4) the

equitable relief sought is appropriate.  <u>Martinez v. Superior Healthplan, Inc.</u>, No.

SA-16-CV-870-XR, 2017 WL 10821037, at *7 (W.D. Tex. Sept. 26, 2017).

Under ERISA, a fiduciary is obligated to "act with prudence, loyalty

and disinterestedness, requirements carefully delineated in the statute."

<u>Langbecker v. Elec. Data Sys. Corp.</u>, 476 F.3d 299, 307 (5th Cir. 2007). "These

duties under the statute include, 'the care, skill, prudence and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" Id. at n. 13 (quoting 29 U.S.C. § 1104(a)(1) (B)). To this end, a fiduciary is required to discharge its duties "solely in the interest of the participants and beneficiaries" and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

A.    MetLife's Fiduciary Duty

With respect to Plaintiff's claim against MetLife under § 1132(a)(3), the Magistrate Judge found that Avila states facts sufficient to allege that MetLife was acting as a fiduciary. (Dkt. # 56 at 8.) Additionally, Judge Hightower found that Avila has alleged sufficient facts at this stage of the proceedings to state a claim that MetLife had a fiduciary duty to "properly provide notice" to Lepiavka that he needed to port or convert his life insurance policy to preserve coverage. (Id. at 9.) Judge Hightower recommends that the Court deny MetLife's motion to dismiss on the breach of fiduciary claim.

MetLife objects to the Recommendation for the following reasons: (1) under ERISA, MetLife, as the Plan's claim administrator, had no fiduciary duty to notify Plan participants of conversion or porting options; (2) the Plan does not require that MetLife send notices to Plan participants of the options to port or convert; (3) the Plan does not give MetLife discretionary authority to decide

whether to provide notice of the options to port or convert; and (4) Plaintiff has not alleged any facts as to MetLife's alleged knowledge of Decedent's health condition prior to his death that justifies the Court taking into account Plaintiff's alleged "limited access to crucial information."  (Dkt. # 57 at 2.)

i.    Whether MetLife is a Fiduciary

"In every case charging breach of ERISA fiduciary duty, [ ] the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  Pegram v. Herdrich, 530 U.S. 211, 226 (2000).  ERISA's definition of "fiduciary" states that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

In the Recommendation, Judge Hightower found that the Plan gives MetLife discretionary authority to decide whether to provide notice of the option to port or convert.  And because MetLife had "discretionary authority or discretionary

control" as to notice, Judge Hightower concluded MetLife was acting as a fiduciary with respect to Avila's claims. (Dkt. # 56 at 8.)

MetLife first argues that although it is a claim administrator, it was not acting in a fiduciary capacity because providing notices of conversion or porting rights is not a fiduciary act under ERISA. (Dkt. # 42 at 13–14.) In addition, MetLife contends nothing in the Plan requires MetLife to provide information as to how to convert or port life insurance coverage or to provide the specific conversion or porting notices to participants. (Id. at 17.) Instead, MetLife argues that under the terms of the Plan, MetLife's only discretionary authority is to interpret the terms of the Plan and make claim determinations in accordance with such terms. (Dkt. # 57 at 3.)

According to Defendant MetLife, Plaintiff concedes in her Response that the Plan does not require MetLife to provide notices to Plan participants of the options to port or convert their life insurance coverage. (Id. at 7.) Plaintiff argues that "MetLife gave itself the option of whether to provide conversion notice to beneficiaries," because the portability "Request Period" varies depending on whether or not notice of the right to port is given to the employee and, if so, when such notice was given. (Id.) Plaintiff contends that MetLife was not required to send beneficiaries notice of their option to convert their life insurance, but since it was entirely within MetLife's discretion as to whether to send the porting notice,

"[u]nder ERISA, this discretion makes the provision of a conversion notice, or the decision not to provide notice, a fiduciary act." (Dkt. # 49 at 8.)

The Fifth Circuit has not formally recognized an ERISA duty on claim administrators to provide notice of beneficiary's option to convert or port his policies absent a policy contained in the insurance plan. For instance, in <u>Beazley v. Metro. Life Ins. Co.</u>, 813 F. App'x 940, 942 (5th Cir. 2020), the Fifth Circuit explained that the plaintiffs there did not identify "case law nor any statutory, regulatory, or Plan provision imposing a duty on MetLife to provide notice to Mr. Beazley of his option to convert or port his policies beyond that already contained in the Plan. Because plaintiffs fail[ed] to identify such a duty, they do not demonstrate that MetLife abused its discretion by mailing notice of the right to convert or port in a dilatory manner." <u>Id.</u> at 942. However, the Court notes the issue on appeal was whether MetLife abused its discretion in denying the plaintiffs' claim, not whether plaintiff sufficiently alleged a breach of fiduciary duty.

MetLife also relies on <u>Huerta v. Metro. Life Ins. Co.</u>, No. H-19-1107, 2020 WL 974943 (S.D. Tex. Jan. 22, 2020), <u>R. & R. adopted</u>, No. H-19-1107, 2020 WL 973388 (S.D. Tex. Feb. 28, 2020) and <u>Keith v. Metro. Life Ins. Co.</u>, No.

H-15-1030, 2017 WL 2537296,[1] at *4 (S.D. Tex. Mar. 15, 2017) to support the

proposition that because providing notices of the option to convert or port to

beneficiaries is a nonfiduciary, ministerial function, there is no fiduciary duty to

provide such notices.  (Dkt. # 57 at 5.)

There are two Keith cases relevant to this Court's analysis.  First, in

ruling on MetLife's summary judgment on March 15, 2017, the Keith I court

concluded that there were genuine issues of material fact as to whether MetLife

acted as a fiduciary and whether it breached a fiduciary duty to communicate with

plaintiff in a manner calculated to avoid confusion and misunderstanding.  Keith I,

2017 WL 1026008, at *4.  There, the court recognized that MetLife, as claim

administrator, "had no routine obligation to notify plan participants of their options

upon termination", but as Avila does here, the plaintiff argued MetLife's fiduciary

obligations stem from facts specific to the case.  Id. at *3.

Then, on June 9, 2017, the Southern District ruled on the issue again

pursuant to Federal Rule of Civil Procedure 52(a)(1).  In Keith II, the Southern

District first concluded that "MetLife appears to have taken a voluntary,

discretionary action for the benefit of a Plan participant.  By exercising its

---

[1] MetLife appears to miscite the Keith opinion, as there are two separate orders in
that case that are relevant here.  One is Keith v. Metro. Life Ins. Co., No. CV H-
15-1030, 2017 WL 1026008 (S.D. Tex. Mar. 15, 2017) ("Keith I") and the other is
Keith v. Metro. Life Ins. Co., No. H-15-1030, 2017 WL 2537296 (S.D. Tex. June
9, 2017) ("Keith II").  The Court addresses each case in turn above.

discretion to assist [plaintiff] in obtaining a potential benefit, MetLife acted as a fiduciary." Keith II, 2017 WL 2537296 at *4. However, the court further found that because MetLife was not the plan administrator, it owed no duty to provide plaintiff with notice of his options for maintaining coverage upon termination; thus, MetLife did not breach any fiduciary duty. Id.

Relying on Keith II, the Huerta court found that the plaintiff's complaint failed to state a claim against MetLife for breach of fiduciary duty. 2020 WL 974943, at *6. The court reasoned that notifying beneficiaries of their option to convert life insurance are functions ministerial, rather than fiduciary, in nature. Id. Thus, the court concluded an alleged failure to perform those actions cannot support a claim for equitable relief for the breach of a fiduciary duty. Id. Unlike here, though, the Huerta plaintiff alleged that "Defendant MetLife confirmed that no notice concerning converting or porting options or separation letter with information on converting or porting options had been sent to [the plan beneficiary]." Id. at *2.

The Court agrees with MetLife that neither ERISA provisions nor the Policy terms specifically required MetLife to send Lepiavka a notice regarding his converting or porting options. Nonetheless, in deciding to provide such notice, through its own discretion, MetLife acted as a fiduciary. See 29 U.S.C. § 1002(21)(A) (explaining that whether a party performing administrative services

is a fiduciary is determined by whether the party possesses discretion in the performance of such tasks.) This creates a fact-intensive situation regarding whether a fiduciary duty was created.  See In re Elec. Data Sys. Corp. "ERISA" Litig., 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004) ("[C]ourts will typically have insufficient facts at the motion to dismiss stage from which to make the law/fact analysis necessary to determine functional or named fiduciary status.").  Indeed, the issue of whether there was a breach of fiduciary duty appears to be resolved at the summary judgment stage in the above-referenced cases rather than the dismissal stage.

Thus, accepting Plaintiff's allegations as true, the Court concludes Avila has adequately alleged Defendant MetLife's fiduciary status.

ii.    Whether Avila Alleges MetLife Breached a Fiduciary Duty

In her Recommendation, Judge Hightower found that Avila has alleged sufficient facts at this stage of the proceedings to state a claim that MetLife had a fiduciary duty to "properly provide notice" to Lepiavka that he needed to port or convert his life insurance policy to preserve coverage for the same reasons that Defendant Dell[2] had a fiduciary duty to provide notice.  (Dkt. # 56 at 9.)  To establish that MetLife had a fiduciary duty to inform, Plaintiff argued in response

---

[2] See discussion infra Section I.B at 19–20 for this Court's analysis on Dell's fiduciary duty.

to the motions to dismiss that MetLife's fiduciary duty to inform Decedent of his conversion rights was triggered based on its knowledge of Decedent's cancer. (Dkt. # 49 at 11.)  Plaintiff contends that the allegations in the Amended Complaint are sufficient to create a fact issue as to whether MetLife had a fiduciary duty to provide Decedent a conversion notice, because MetLife's knowledge of Decedent's "circumstances may have created a fiduciary duty to inform him of the need to convert." (Id. at 1.)

MetLife argues that MetLife had no knowledge of decedent's health condition and even if it did have such knowledge, no fiduciary duty was created to provide notice of decedent's conversion rights. (Dkt. # 57 at 12.)  Unlike Dell's status as a plan administrator, MetLife contends "[t]here was no reason for MetLife, the claim administrator for the Life Plan, and Dell to speak about Decedent's confidential health information during the first 24 months of his disability and Plaintiff does not allege any reason for them to have done so in her Amended Complaint." (Id.)

Although the Magistrate Judge reasoned that "Avila alleges that Dell and MetLife worked in close contact to handle her claim and that Defendants exchanged information regarding Lepiavka's benefits, including MetLife's records and actions," the Magistrate recognized that the alleged collaboration between MetLife and Dell occurred only after Lepiavka's death. (Dkt. # 56 at 9.)  Thus, the

Court agrees that the factual allegations regarding Dell's knowledge of Lepiavka's medical condition prior to the insurance coverage lapse cannot be imputed onto MetLife for purposes of establishing a fiduciary duty under the "special circumstances" standard discussed below.  See infra Section I.B at 17–20.  Indeed, the cases discussed herein also demonstrate that there is a difference between an employer (plan administrator) and claim administrator and whether they owe a duty to notify a beneficiary of his option to convert his plan.  See Keith I, 2017 WL 1026008, at *4–5.

The Court concludes that Avila's complaint fails to state a claim that MetLife had a fiduciary duty to provide notice of the option to port or convert. See Beazley, 813 F. App'x at 942 (finding there is no duty on MetLife to provide notice of option to convert or port a policy).  Accordingly, MetLife's objection to the Recommendation is **SUSTAINED/GRANTED**.  The Court **GRANTS** MetLife's Motion to Dismiss.

B.     Dell's Fiduciary Duty

With respect to Plaintiff's claim against Dell under § 1132(a)(3), the Magistrate Judge found that Avila plausibly alleges Dell had a fiduciary duty to inform Lepiavka of his need to convert the Policy, and that Lepiavka did not receive such notice.  (Dkt. # 56 at 7.)  Dell objects to this finding.  (Dkt. # 58.)

16

In its motion to dismiss, Dell does not dispute that as Plan sponsor and administrator, it is a fiduciary in connection with the Group Plan. (See Dkt. # 33 at 18.) However, Dell argues it had no duty to provide Lepiavka with advice concerning his conversion rights absent a request for information from Lepiavka. (Dkt. ## 43 at 1; 58 at 4.) Because the Amended Complaint does not allege a specific participant-initiated request for information, Dell contends it had no fiduciary duty to determine whether confusion about a plan term or condition existed; thus, Plaintiff fails to state a claim against Dell upon which relief can be granted. (Dkt. # 58 at 5.) Even if a specific inquiry were not needed, Dell further argues that there must still be some indication of confusion or ignorance. (Id. at 6.)

In Switzer v. Wal-Mart Stores, Inc., 52 F.3d 1294 (5th Cir. 1995), the Fifth Circuit held that "absent a specific participant-initiated inquiry, a plan administrator does not have any fiduciary duty to determine whether confusion about a plan term or condition exists. It is only after the plan administrator does receive an inquiry that it has a fiduciary obligation to respond promptly and adequately in a way that is not misleading." Id. at 1299.

Subsequently, in Ehlmann v. Kaiser Found. Health Plan of Tex., 198 F.3d 552 (5th Cir. 2000), the Fifth Circuit recognized that in addition to a specific inquiry from a plan participant, special circumstances with a potentially "extreme impact" on a plan as a whole, where plan participants generally could be materially

17

and negatively affected, could maybe support imposition of such an affirmative duty in a particular case.  <u>Id.</u> at 556; <u>see also</u> <u>In re Enron Corp. Sec., Derivative & ERISA Litig.</u>, 284 F. Supp. 2d 511, 559 (S.D. Tex. 2003).

In <u>Martinez v. Schlumberger, Ltd.</u>, 338 F.3d 407, 412 (5th Cir. 2003), the Fifth Circuit also made clear that "trust principles impose a duty of disclosure upon an ERISA fiduciary when there are material facts affecting the interest of the beneficiary which the fiduciary knows the beneficiary does not know but needs to know for his protection."  <u>Id.</u> at 412 (internal quotations omitted).  The <u>Martinez</u> Court further held that once an employer chooses to exercise its discretionary authority by informing the employees of the future status of a benefit plan, it acts as a fiduciary and thus has a duty not to misrepresent the truth.  <u>Id.</u> at 416.

Moreover, in <u>Keith I</u>, discussed above, that court explained, "Plan administrators ordinarily owe no fiduciary duty to participants or beneficiaries to explain plan terms to them or to confirm that they understand the terms."  <u>Keith I</u>, 2017 WL 1026008, at *5.  "But the facts of this case are not ordinary."  <u>Id.</u>  In support of that finding, the court highlighted that the human resources manager "was aware of White's [medical] condition and actively involved in White's claim process," that the human resources manager instructed the claims administrator not to call White because of his condition, and that the human resources manager

18

contacted the claims administrator with questions about the meaning of the second letter but she did not provide the clarification to White.  Id.

However, in Shonowo v. Transocean Offshore Deepwater, Inc., No. 4:10-CV-1500, 2011 WL 3418405 (S.D. Tex. Aug. 3, 2011), that court also explained it was "unaware of any provision under ERISA that requires an employer to personally marshal an employee through the application process when there is knowledge of an employee's illness."  Id. at *7.  Therefore, the Court was not convinced that the actions complained of by the plaintiff rose to a breach of fiduciary duty under ERISA because the plaintiff has presented "no allegations . . . of deceptive practices, misrepresentations, or other behavior typically associated with fiduciary breaches by employers under ERISA, as required by Varity v. Howe."  Id.  As Avila does here, the Shonowo plaintiff alleged that his late-spouse's employer failed to provide his late-wife with adequate notice of her right to convert her group life insurance policy to an individual life insurance policy upon her termination.  Id. at *5.

Here, Avila argues that a beneficiary-initiated inquiry is not required to trigger a duty to disclose where a fiduciary knows or should know of facts that suggest disclosure is required.  (Dkt. # 49 at 14.)  Instead, Avila contends a duty to inform may be triggered after "some other special circumstance," based on Ehlmann.  (Id.)  According to Avila, where an ERISA fiduciary is made aware of

19

circumstances that suggest that its silence would be harmful, courts have found that a duty to notify is triggered. (Id.) Avila points to an out of circuit case where "the court found that the employer's awareness of the beneficiary's severe illness 'triggered [its] fiduciary duty to inform' because the employer was 'on notice that [the beneficiary] would be interested in continued life insurance coverage.'" See Harris v. Life Ins. Co. of N. Am., 419 F. Supp. 3d 1169, 1174 (N.D. Cal. 2019).

Avila contends a special circumstance exists here that imposes a duty on the fiduciary to inform because "Dell and MetLife were aware that the ability to convert would be important to Mr. Lepiavka, because they both knew he had been fighting a serious illness that put him on long-term disability for two years." (Dkt. # 49 at 14.) Specifically, the Amended Complaint states that "[o]n or about December 3, 2017, Arseny took disability leave from Dell to undergo cancer treatment again. Like with his prior leave in 2012, Arseny coordinated with Dell to prepare for his leave." (Dkt. # 33 at 6.) Plaintiff further claims "not only did Mr. Lepiavka work with the Dell Benefits Center to arrange his medical leave, but even the founder, chairman, and CEO of Dell Technologies, Michael Dell, knew of Mr. Lepiavka's condition and offered to help in any way he could." (Dkt. # 49 at 8.)

Unlike in Huerta, where there were "[n]o facts alleged in [p]laintiff's complaint suggest[ing] that [the employer] [d]efendants took any gratuitous action that was fiduciary in nature, which in turn, gave rise to a duty to avoid

misunderstandings and confusion," the Court finds Avila alleges facts to allow the reasonable inference that Dell had knowledge of Lepiavka's condition or concerns. See 2020 WL 974943 at *7.

The Court concludes that Avila has stated enough facts to state a breach of fiduciary duty claim against Dell that is at least plausible on its face because Avila alleges special circumstances known to Dell that would have materially and negatively affected Lepiavka as a plan participant.  Accordingly, the Court **OVERRULES** Dell's objections.  The Court **DENIES** Dell's Motion to Dismiss.

CONCLUSION

For the reasons given, the Court **ADOPTS IN PART** Magistrate Judge Susan Hightower's Report and Recommendation (Dkt. # 56.)  The Court **DENIES** Defendant Dell's Motion to Dismiss (Dkt. # 43) and **GRANTS** Defendant MetLife's Motion to Dismiss (Dkt. # 42.)

**IT IS SO ORDERED.**

**DATED**: Austin, Texas, June 12, 2025.

_____
David Alan Ezra
Senior United States District Judge